**MAYALL HURLEY, P.C.**
112 S. Church Street
Lodi, CA 95240
Telephone (209) 477-3833
**JENNY D. BAYSINGER**
CA State Bar No. 251014
**ROBERT J. WASSERMANN**
CA State Bar No. 258538

**Attorneys for Plaintiff, MERCEDES CERVANTES, individually and on behalf of all others similarly situated**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MERCEDES CERVANTES,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN DIEGO, and DOES 1-40, inclusive,<br><br>　　　　Defendants. | Case No.: '25CV0275 H    JLB<br><br>**COLLECTIVE ACTION COMPLAINT FOR DAMAGES FOR:**<br><br>1. **WILLFUL FAILURE TO PAY OVERTIME [FLSA]** |

  Plaintiff MERCEDES CERVANTES ("Cervantes" or "Plaintiff") brings this action against Defendants the COUNTY OF SAN DIEGO (the "County" or "Defendant"); and DOES 1 through 40 for general, compensatory, and statutory damages, costs, and attorneys' fees resulting from the defendants' unlawful and tortious conduct, and as ground therefore alleges.

**PARTIES**

  1. Cervantes is an individual and is, and was at all times relevant herein, a resident of Riverside County, California. At all times relevant hereto, Cervantes was County's "employee" as that term is defined under 29 U.S.C. § 203(c)(1). At all times relevant hereto, Cervantes was in the "employ" of County as that term is defined under 29 U.S.C. § 203(g) and working within San Diego County, California.

2. At all times relevant herein, County was Cervantes' "employer" as that term is defined under 29 U.S.C. § 203(d).

3. Cervantes is not aware of the true names and capacities of the defendants sued herein as DOES 1 through 40, whether individual, corporate, associate, or otherwise, and therefore sues such defendants by these fictitious names. Cervantes will amend this Complaint to allege their true names and capacities when ascertained. Cervantes is informed and believes, and on that basis alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that Cervantes' injuries and damages herein alleged were legally caused by such defendants. Unless otherwise indicated, each defendant was acting within the course and scope of said agency and/or employment, with the knowledge and/or consent of said co-defendant.

4. Cervantes is informed and believes and thereupon alleges that at all times mentioned herein, each of the defendants, including each DOE defendant, was acting as the agent, servant, employee, partner, and/or joint venturer of and was acting in concert with each of the remaining defendants, including each DOE defendant, in doing the things herein alleged, while at all times acting within the course and scope of such agency, service, employment partnership, joint venture and/or concert of action. Each defendant, in doing the acts alleged herein, was acting both individually and within the course and scope of such agency and/or employment, with the knowledge and/or consent of the remaining defendants.

5. The term "Defendants" refers to all defendants, including Doe defendants.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as the sole cause of action arises under the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.

7. Venue is proper pursuant to 28 U.S.C. § 1391, subdivision (b) as the County resides within the Southern District of California. Venue is further proper in this court because the unlawful acts and omissions alleged herein took place within the Southern District of

California, and Cervantes' former place of employment with County is located within the Southern District of California.

8. Cervantes hereby demands a jury trial.

## GENERAL ALLEGATIONS

9. Cervantes began working for County as a non-exempt Residential Care Worker Supervisor on January 26, 2024. In this role, Cervantes was assigned to the Polinsky Children's Center, which is a 24-hour emergency shelter facility for children separated from their parents or legal guardians. In her position as a Residential Care Worker Supervisor, Cervantes' base hourly rate was between $30.64 and $32.19.

10. In this role, Cervantes also earned additional compensation in the form of 1) night shift premiums paid at the rate of $1.80 per hour worked during a "night shift" and 2) a 10% increase in earnings because of her assignment/placement at the Polinsky Child Center. These earnings were all includable in the "regular rate of pay" pursuant to 29 U.S.C. § 207(e).

11. Prior to January 2024, for a period between February and June 2021, Cervantes worked for County in its Code Compliance department as an hourly code enforcement worker. During that time, she was paid a base hourly rate of $25.20.

12. At all relevant times herein, Cervantes was an employee of County whose compensation was governed by the Federal Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. and its accompanying regulations. She was always properly classified by the County as "Bi-weekly FLSA 7 days" and was an hourly, non-exempt employee.

13. Under the FLSA, a public employee such as Cervantes must receive additional compensation for hours worked beyond 40 in a workweek. Employees can be compensated for overtime worked either by monetary ("cash") compensation at the rate of 1.5 times the regular rate of pay for every overtime hour worked or by compensatory time off ("CTO") at the rate of 1.5 hours for every overtime hour worked. 29 U.S.C. § 207(o).

14. Under the FLSA, a public employee such as Cervantes is capped at 240 hours of accumulated CTO generally although 480 hours of accumulated CTO are authorized for

employees who are assigned to an emergency response unit. 29 U.S.C. § 207(o)(3)(A). After the cap is reached, public employers must begin compensating public employees monetarily for overtime hours worked. When CTO is redeemed, the FLSA requires it be paid at the "regular rate" for the workweek during which the employee redeems it. 29 U.S.C. §207(o)(3)(B); 29 C.F.R. § 553.21(6)(B)

15. Throughout Cervantes' employment, she worked overtime and was compensated for that overtime work through both cash and CTO.

16. Whenever she was compensated for overtime hours worked in "cash", she was always paid for those hours *solely* at the "regular rate of pay", rather than the required 1.5 times the regular rate of pay.

17. By way of specific example, during the 4/23-05/6/2021 bi-weekly pay period, Cervantes worked a total of 93.60 hours; 80 "regular hours" and 13.60 "overtime hours." Inexplicably, however, she was paid the same "regular rate" of $25.52 for each hour, including the overtime hours. Overtime hours worked should have been paid at 1.5 times $25.52 or $38.28.

18. County's pattern and practice of compensating "cash" overtime only at the regular rate, instead of 1.5 times the regular rate, continued when Cervantes began working for the Polinsky Children's Center in January 2024.

19. By way of specific example, during the 7/12-7/25/2024 bi-weekly pay period, Cervantes worked a total of 101 hours; 80 regular hours and 21 overtime hours. She also earned a $1.80 night shift premium for *each* hour that she worked and an additional 10% ($3.219/hr). Her "regular rate of pay" for the two workweeks comprising the bi-weekly pay period was thus $37.21. As such, the rate of pay for overtime work should have been 1.5 times the regular rate of $37.21 or $55.81. Instead, just as had been the case during her employment with County in 2021, Cervantes was only paid for overtime at 1 x the regular rate not the required 1.5x the regular rate.

/ / /

20. There were also occasions when County compensated Cervantes with CTO for overtime worked. By way of specific example, during the 1/26-2/8/2024 bi-weekly pay period, Cervantes worked 88.50 total hours; 80 regular hours and 8.50 overtime hours. She was compensated for those OT hours worked with 12.75 hours of CTO. While County credited her the correct number of hours (1.5 hours CTO for every OT hour worked), it did not properly compensate her at the required "regular rate of pay" when she redeemed those hours.

21. Instead, when Cervantes used/redeemed 8 CTO hours during the 10/4-10/17/2024 bi-weekly pay period, County paid her only at the "base" hourly rate applicable during those workweeks of $32.19. Since Cervantes earned night shift premiums for 57.8 of the hours she worked during that period, the "regular rate" at which her CTO should have been paid was more than $32.19.

22. Cervantes is informed and believes, County has had an ongoing policy and practice of undercompensating employees for "cash" overtime at the rate of 1x the "regular rate of pay" instead of the required 1.5x the "regular rate of pay." The ongoing and pervasive nature of the policy/practice throughout County is evidenced by the fact it happened to Plaintiff in the exact same way during two separate stints of employment with the County, in two entirely different positions and departments within the County.

23. Additionally, Cervantes is informed and believes County had (and has) an ongoing practice of paying redeemed CTO only at any employee's base hourly rate, instead of the required "regular rate of pay".

24. Cervantes' retirement earnings, and those of other non-exempt employees, are based directly on the amount of wages earned with the County. Since County did not accurately compensate Cervantes, and other non-exempt employees, for overtime hours worked and/or redeemed CTO, their wages for purposes of calculating the retirement income are inaccurately low. In addition to being deprived overtime wages, County's failure to properly compensate Cervantes and its other employees has negatively impacted vested retirement income in that each will be, is being and/or will continue to be, deprived of vested income rightfully earned.

25. As a direct and proximate result of Defendants' conduct, Gerdeman has lost income and related benefits, past and future.

## COLLECTIVE ACTION ALLEGATIONS

26. Plaintiff seeks to maintain her first cause of action as an "opt-in" collective action pursuant to 29 U.S. 216(b) as to claims for overtime, liquidated damages (or, alternatively, interest) and attorneys' fees under the FLSA. In addition to Plaintiff, numerous other current and former hourly, non-exempt employees of County who worked hours beyond his/her normal workday and beyond forty (40) in a workweek are similarly situated in that County failed to pay them overtime premium compensation at the required 1.5 times the "regular rate of pay" for those hours.

27. In addition, numerous other current and former non-exempt County employees earned CTO and properly redeemed that CTO, but were underpaid as they were not paid for redeemed CTO at the required "regular rate of pay" for the workweek in which it was redeemed.

28. Plaintiff is representative of those other current and former employees and is acting on behalf of their interests as well as her own in bringing this action. These similarly situated employees are known to County, are readily identifiable, and may be located through County's records. These similarly situated employees may be readily notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees under the FLSA.

## CLASS ACTION ALLEGATIONS

29. Plaintiff seeks to maintain this action as a class action as to the First Cause of Action. Plaintiff brings this action, on behalf of herself and all other similarly situated employees, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The putative class which Plaintiff seeks to represent consists of the following:

/ / /

/ / /

      a. All current and former hourly, non-exempt employees of County who worked beyond forty (40) hours in a workweek at any time from three (3) years prior to the date of filing through the date of certification (the "FLSA OT Class");

The FLSA Class are collectively referred to as the Class.

30. The class of persons is so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action is a benefit to the parties and to the Court. Plaintiff is informed and believes, and based thereon alleges, that San Diego County employs more than 7,500 employees who satisfy the class definition. Although the exact number and identity of class members is not presently known, they can be identified in San Diego County's records through coordinated discovery pursuant to this class action.

31. This action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure because the questions of law and fact which are common to class members clearly predominate over any questions affecting only individual members and because a class action is superior to other available methods for adjudicating the controversy.

32. There are numerous common questions of law and fact arising out of San Diego County's conduct. This class action focuses on San Diego County's: (a) uniform written policies and practices failing to compensate non-exempt employees for work performed outside of normal business hours, and the underpayments of minimum wage and overtime premium wages that flow therefrom.

33. Furthermore, common questions of fact and law predominate over any questions affecting only individual members of the class. The predominating common or class-wide questions of law and fact include the following:

      a. Whether County had a policy of only compensating for OT at the "regular rate" instead of 1.5 times the "regular rate of pay";

      b. Whether compensating for overtime hours worked at the "regular rate of pay" violates the FLSA;

      c.   Whether County's policy and practice of redeeming CTO at the base hourly rate violates the FLSA;

      d.   Whether County's conduct that allegedly violates the FLSA was willful;

      e.   Whether the Class is entitled to unpaid wages, liquidated damages, statutory penalties and/or restitutionary relief, and the amount of the same.

34. Plaintiff's claims are typical of the claims of the members of the Class as a whole, all of whom have sustained and/or will sustain damage and injury as a proximate and/or legal result of the alleged violations of County. County's claims are typical of those of the Class because County subjected Plaintiff and each member of the Class to the same violations alleged herein.

35. The defenses of County, to the extent that such defenses apply, are applicable generally to the whole Class and are not distinguishable as to the proposed class members.

36. Plaintiff will fairly and adequately protect the interests of all members of the Class, and has retained attorneys with extensive experience in litigation, including class and representative actions. Plaintiff has no interests that conflict with those of the Class. Plaintiff is able to fairly and adequately protect the interests of all members of the class because it is in his best interest to prosecute the claims alleged herein in order to obtain the full compensation due himself and the other class members.

37. A class action is superior to any other method available for fairly and efficiently adjudicating the controversy because 1) joinder of individual class members is not practicable, 2) litigating the claims of individual class members would be unnecessarily costly and burdensome and would deter individual claims, 3) litigating the claims of individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, 4) class members still working for Defendants may be fearful of retaliation if they were to bring individual claims, 5) class members would be discouraged from pursuing individual claims because the damages available to them are relatively small, and 6)

/ / /

public policy encourages the use of the class actions to enforce employment laws and protect individuals who, by virtue of their subordinate position, are particularly vulnerable.

38. Judicial economy will be served by maintenance of this lawsuit as a class action. To process numerous virtually identical individual cases will significantly increase the expense on the Court, the class members, and Defendants, all while unnecessarily delaying the resolution of this matter. There are no obstacles to effective and efficient management of this lawsuit as a class action by this Court and doing so will provide multiple benefits to the litigating parties including, but not limited to, efficiency, economy, and uniform adjudication with consistent results.

39. Notice of a certified class action and any result or resolution of the litigation can be provided to class members by mail, email, publication, or such other methods of notice as deemed appropriate by the Court.

**FIRST CAUSE OF ACTION**
**VIOLATION OF FAIR LABOR STANDARDS ACT**
**(Failure to Pay Overtime Compensation)**
**Against County and DOES 1 through 40**

40. Cervantes hereby realleges and incorporates by reference each and every paragraph and allegation herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

41. The Fair Labor Standards Act, 29 USC §§ 201 et seq. and 29 CFR §§ 778 et seq. require time and a half pay of the regular rate of pay for the time an employee works over forty hours a workweek. 29 USC §§ 207 and 215(a) make the failure to properly compensate for overtime unlawful.

42. At all times relevant herein, County was Cervantes' employer and required to pay Cervantes and the FLSA OT Class Members overtime rates for all hours worked beyond forty (40) in a workweek pursuant to FLSA.

43. As discussed above, Defendants failed to provide Cervantes and the FLSA OT Class Members with 1.5 times the regular rate of pay for all hours worked in excess of forty (40) hours per week in direct violation of the FLSA.

44. In addition, when Cervantes and other members of the FLSA OT Class redeemed CTO earned for overtime work performed, it was improperly paid at the "base hourly rate", instead of the "regular rate of pay" expressly required by the FLSA.

45. Cervantes is informed and believes, and on that basis alleges, that County's failure to properly compensate her and other members of the FLSA OT Class for overtime work performed for its benefit and/or earned CTO redeemed was willful pursuant to 29 U.S.C. § 255(a). In particular, County was specifically aware of the FLSA statutes and regulations governing overtime compensation and were specifically aware Cervantes and the FLSA OT Class Members were subject to the FLSA. Despite this knowledge, County engaged in a pattern and practice of undercompensating employees in violation of the FLSA.

46. Cervantes is further informed and believes, and based thereon alleges, that County's failure to properly compensate her and the FLSA OT Class Members for overtime and redeemed CTO was willful and was not the result of a good faith attempt to comply with the FLSA.

47. Wherefore, Cervantes and the other members of the FLSA OT Class have been damaged as set forth above and request relief as hereafter provided.

**PRAYER FOR RELIEF**

WHEREFORE, Cervantes prays judgment against Defendants as follows:

**FIRST CAUSE OF ACTION AGAINST COUNTY AND DOES 1-40:**

1. For compensatory, special, and general damages, including underpaid overtime and redeemed CTO hours; lost wages and related benefits in an amount according to proof, but in excess of the minimum jurisdictional limit of this Court;

2. For liquidated damages in an amount equal to the underpaid overtime compensation and redeemed CTO pursuant to 29 U.S.C. § 216(b);

3. For statutory attorneys' fees and costs, including those available under 29 USC § 216(b) and Code of Civil Procedure § 1021.5;

///

4. For prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law, according to proof; and

5. For penalties pursuant to 29 USC § 216.

6. For such other and further relief as the court deems proper.

DATED: January 31, 2025             **MAYALL HURLEY, P.C.**

By /s/ Jenny D. Baysinger
JENNY D. BAYSINGER
Attorneys for Plaintiff,
MERCEDES CERVANTES