<pre>
 1
 2
 3
 4
 5
 6
 7                    UNITED STATES DISTRICT COURT
 8                  SOUTHERN DISTRICT OF CALIFORNIA
 9
10   MERCEDES CERVANTES,                  Case No.: 3:25-cv-00275-H-JLB
11                        Plaintiff,
                                          ORDER GRANTING PLAINTIFF'S
12   v.                                   MOTION FOR PRELIMINARY
                                          CERTIFICATION UNDER 29 U.S.C.
13   COUNTY OF SAN DIEGO; and DOES        § 216(b)
     1–40, inclusive,
14
                          Defendants.     [Doc. No. 20]
15
</pre>

On February 6, 2025, Plaintiff Mercedes Cervantes filed a complaint against the County of San Diego, alleging violations of the Federal Labor Standards Act, 29 U.S.C. § 201, et seq., for failure to pay overtime compensation. (Doc. No. 1, Complaint.) On March 17, 2025, Defendant County of San Diego filed its answer. (Doc. No. 4, Answer.) On October 20, 2025, Plaintiff filed a motion for preliminary certification under 29 U.S.C. § 216(b). (Doc. No. 20.) On November 24, 2025, Defendant filed a response in opposition. (Doc. No. 22.) On December 8, 2025, the Court held a hearing on the motion. (Doc. No. 24.) For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.

/ / /
/ / /
/ / /
/ / /
/ / /

## Background

As alleged in the Complaint, Plaintiff Mercedes Cervantes was an employee of Defendant County of San Diego. (Doc. No. 1, Complaint, ¶ 1.) From February 2021 to June 2021, Plaintiff worked for the County in its Code Compliance department as an hourly code enforcement worker at an hourly rate of $25.20. (Doc. No. 1, Complaint, ¶ 11.) On January 26, 2024, Plaintiff began working for the County in the Polinsky Children's Center as a residential care worker supervisor at an hourly rate between $30.64 and $32.19. (Doc. No. 1, Complaint, ¶ 9.) As a residential care worker supervisor, Plaintiff earned a night shift premium paid at a rate of $1.80 per hour and a 10% increase in earnings because of her placement at the Polinsky Children's Center. (Doc. No. 1, Complaint, ¶ 10.)

Plaintiff alleges that her compensation was governed by the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and that she was properly classified by the County as a bi-weekly FLSA hourly-non-exempt employee. (Doc. No. 1, Complaint, ¶ 12.) Plaintiff alleges that FLSA allows employees who work overtime to be compensated compensatory time off ("CTO") at 1.5 times the base rate of pay. (Doc. No. 1, Complaint, ¶ 13.) Plaintiff claims that Defendant violated FLSA by compensating her CTO at the base rate of pay instead of the FLSA-required 1.5 times the base rate of pay.[1] (Doc. No. 1, Complaint, ¶ 16.) Plaintiff's claims extend to her time at both the Code Compliance department and Polinsky Children's Center. (Doc. No. 1, Complaint, ¶¶ 17–19.) Plaintiff further alleges that Defendant had an ongoing policy or regular practice of under-compensating its employees for CTO overtime. (Doc. No. 1, Complaint, ¶¶ 18–23.)

On October 10, 2025, Plaintiff moved for preliminary certification under Section 216(b). (Doc. No. 20.) Plaintiff seeks preliminary certification for a collective action on her CTO claim, defining the group as:

[C]urrent and/or former non-exempt employees of County of San Diego who

---

[1] Plaintiff's complaint initially alleged FLSA violations for both cash and CTO overtime; however, Plaintiff withdrew her allegations of cash violations after discovery began. (Doc. No. 1, Complaint; Doc. No. 20.)

> redeemed compensatory time off earned pursuant to the Fair Labor Standards Act . . . during a workweek when he/she also earned other items of compensation County has determined are includable in the regular rate of pay (the "FLSA Rate") at any time from September 5, 2022 through October 20, 2025.

(Doc. No. 20.) Plaintiff labels this group the "FLSA CTO Class Members." (Doc. No. 20.) Plaintiff represents in her motion for preliminary certification that there may be approximately 18,000 individuals who redeemed CTO during the class period and at least 437 job titles eligible to earn non-discretionary pay. (Doc. No. 20 (citing Ex. 3, 21:11–16; Ex. 1, Interrogatory 1, 4).)

## Discussion

### I. Legal Standard

Congress enacted the Fair Labor Standards Act of 1938 ("FLSA") to "eliminate both substandard wages and oppressive working hours." Silloway v. City and County of San Francisco, 117 F.4th 1070, 1074 (9th Cir. 2024) (quoting Helix Energy Solutions Group, Inc. v. Hewitt, 598 U.S. 39, 44 (2023)). To that end, Section 216(b) of FLSA allows employees to collectively litigate violations of FLSA's minimum-wage and overtime-compensation requirements in certain circumstances. Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 448 (2016); Harrington v. Cracker Barrel Old Country Store, Inc., 142 F.4th 678, 681 (9th Cir. 2025). The relevant portion of Section 216(b) reads:

> An action to recover the liability prescribed in [this subsection] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The Ninth Circuit confirmed in Campbell v. City of Los Angeles that Section 216(b)'s text permits workers to collectively litigate if they "(1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation,

in writing." 903 F.3d 1090, 1100 (9th Cir. 2018) (citing 29 U.S.C. § 216(b)). The Ninth Circuit also observed that because FLSA "specifies little else" than the above text, including procedures or the definition of "similarly situated," much of collective action practice "is a product of interstitial judicial lawmaking or ad hoc district court discretion." Id.

The Ninth Circuit has adopted the "near-universal practice" of assessing the propriety of a collective action through a two-step certification process. Harrington, 142 F.4th at 681 (citing Campbell, 903 F.3d at 1108). The first step occurs where a plaintiff moves for preliminary certification of the collective action "at or around the pleading stage." Campbell, 903 F.3d at 1109. At this step, the court determines whether potential plaintiffs are "similarly situated" such that it may certify the collective action to send out written notice to workers who may wish to join. Id. at 1101. The Supreme Court has made clear that the "sole consequence" of preliminary certification is "the sending of court approved written notice." Genesis Healthcare Corp. v. Symcyzk, 569 U.S. 66, 75 (2013)). Members are considered "similarly situated" when they were subjected to the same alleged violations of FLSA and share a common theory of the defendant's violations. Senne v. Kansas City Royals Baseball Corp., 934 F.3d 918, 949 (9th Cir. 2019). To determine this, the court "is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." Campbell, 903 F.3d at 1109. The inquiry is a "lenient" one, "loosely akin to a plausibility standard, commensurate with the stage of the proceedings." Id.

The second step of the two-step certification process occurs later in litigation, after the close of discovery. Id. At the second stage, the defendant moves for "decertification" of the collective action, which involves a "more exacting look at the plaintiffs' allegations and the record." Id. District courts may decertify collective actions at the second stage "when conditions make the collective mechanism truly infeasible." Id. (analogizing step two of the certification process to the Rule 23 commonality inquiry in Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011)).

## II. Preliminary Certification

Plaintiff argues that she and the FLSA CTO Class Members are "similarly situated" because Defendant "readily admits it has never paid a single non-exempt employee for redeemed CTO at the [FLSA] rate of pay" and that "[t]his practice results from application of San Diego County compensation ordinance 4.1.4, which applies uniformly to all employees." (Doc. No. 20 (citing Ex. 3, 13:20–14:18, 19:18–20:13, 21:20–24, 20:14–21:4).) The deposition of a manager in Defendant's Central Payroll Administration yielded testimony that "anything [] considered time off," including CTO, was paid at the base rate. (Doc. No. 20, Ex. 3, 19:18–21:16.) These allegations, combined with Plaintiff's complaint, plausibly set forth a "legal or factual similarity" material to the resolution of the claims: that the existence and execution of a broadly applicable policy gave rise to a violation of FLSA. Senne, 934 F.3d at 948 (quoting Campbell, 903 F.3d at 1117). The Ninth Circuit found in Senne that "critical to [its] decision" to affirm the district court's preliminary certification was that "plaintiffs allege[d] a single, FLSA-violating policy . . . and argue[d] a common theory of defendants' statutory violations." 934 F.3d at 949. The same can be said of Plaintiff's allegations here. Plaintiff alleges a common theory of Defendant's statutory violation: that San Diego compensation ordinance 4.1.4 mandates paying CTO at an employee's base rate instead of their regular rate in violation of FLSA. This common theory plausibly sets forth that Plaintiff is "similarly situated" to the prospective class. Preliminary certification is therefore proper.

Defendant responds that Plaintiff's showing does not meet the "material" threshold because the salary premiums she received were specific to her position. (Doc. No. 22.) Defendant also argues that because Plaintiff's job was one of only a few positions eligible for the night shift and Polinsky Children's Center premiums, as well as the fact that Plaintiff only redeemed CTO on one occasion, the Court should not find that Plaintiff is similarly situated to the proposed collective action group. (Doc. No. 22.) Defendant further argues that Plaintiff is not similarly situated to alleged FLSA violations that occurred outside of her term of employment. (Doc. No. 22.) Defendant's arguments are better suited for step

two of the preliminary certification process, where courts are instructed to take a "more exacting look at the plaintiffs' allegations and the record" to determine whether to decertify the class. Campbell, 903 F.3d at 1109.

Plaintiff need only satisfy preliminary certification's "lenient" standard "loosely akin to plausibility" at this step. Id. Plaintiff has met this burden. Id. at 949. Plaintiff's preliminary certification is granted for the "sole consequence" of sending written notice to potential opt-in plaintiffs. Symcyzk, 569 U.S. at 75. The Court renders no opinion on the merits of Plaintiff's claims. Defendant is free to challenge the scope of the class by filing a motion for decertification after discovery.

## Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff Mercedes Cervantes' motion for preliminary certification. Within sixty (60) days of the date of this order, Defendant will provide Plaintiff with the names and last known mailing and email addresses of:

> Current and former non-exempt employees of County of San Diego who redeemed compensatory time off earned pursuant to the Fair Labor Standards Act . . . during a workweek when he/she also earned other items of compensation County has determined are includable in the regular rate of pay (the "FLSA Rate") at any time from **December 15, 2022 through December 15, 2025**.

(Doc. No. 20.) Plaintiff is authorized to send each prospective opt-in plaintiff a notice informing them of the pendency of this lawsuit and their rights with respect thereto. Defendant shall, within ten (10) days of the date of this order, submit to this Court any objections it has to Plaintiff's proposed notice letter and consent form or, in the alternative, submit its own proposed notice letter and consent form.

**IT IS SO ORDERED.**

DATED: December 15, 2025

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT